1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

**FILED**

**Jul 11, 2014**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In re:                          )
                                )
BRANTLEY JUSTIN GARRETT and     )   Case No. 12-36599-B-7
ERIN EILEEN GARRETT,            )
                                )   Chapter 7.
          Debtors.              )
                                )
_____ )
                                )   District Court No. 2:14-cv-1639 MCE
                                )
JAMES DAILY and KATHARINE       )
DAILY,                          )
                                )   Adv. Pro. No. 12-02719-B
          Plaintiffs.           )
                                )   REPORT AND RECOMMENDATION
vs.                             )
                                )
BRANTLEY JUSTIN GARRETT,        )
                                )
          Defendant.            )
_____ )
                                )
                                )
BRANTLEY JUSTIN GARRETT,        )
                                )
          Cross-Complainant.    )
                                )
vs.                             )
                                )
BEACH & O'NEILL INSURANCE       )
ASSOCIATES, INC.,               )
                                )
          Cross-Defendant.      )
_____ )

22

23

24

25

26

27

28

        Before the court is a motion for summary judgment (Adv. Dkt.
111) (the "Motion") in a non-core proceeding.  Specifically, it
is a cross-defendant's motion for summary judgment on a cross-
claim filed by a Chapter 7 debtor who is a defendant in an
adversary proceeding alleging non-dischargeability of a debt

- 1 -

under 11 U.S.C. § 523(a)(2)(A).  The cross-claim alleges only state law claims against the cross-defendant, who is a non-debtor party in these proceedings.  The resolution of this matter will have no effect on the Chapter 7 bankruptcy estate and is therefore not related to a case under title 11 within the meaning of 28 U.S.C. § 1334(b).  A bankruptcy court has jurisdiction over a related proceeding when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984); In re Feitz, 852 F.2d 455, 457 (9th Cir. 1988).  As evidenced by the report of no distribution filed by the Chapter 7 trustee on October 23, 2012, the parent bankruptcy case has been fully administered.  The Chapter 7 debtor received a discharge on January 7, 2013.  The bankruptcy case remains open solely because of the pendency of this adversary proceeding.  Accordingly, the cross-claim is before the court based solely on supplemental jurisdiction under 28 U.S.C. § 1367(a).

A hearing on the Motion was held on May 6, 2014, at 9:32 a.m.  Appearances are noted on the record.  The court took the matter under submission based on the pleadings and supporting papers.  The following constitutes the court's proposed findings of fact and conclusions of law, pursuant to 28 U.S.C. § 157(c)(1) and Federal Rule of Bankruptcy Procedure 7052.

Cross-Defendant Beach & O'Neill Insurance Associates, Inc. ("Beach") moves for summary judgment on Defendant/Cross-Claimant Brantley Justin Garrett ("Garrett")'s first amended cross-claim

-2-

filed May 7, 2013 (Adv. Dkt. 41) (the "First Amended Cross-Claim").

For the reasons stated herein, Garrett's opposition should be overruled.  The motion should be granted, and judgment should be entered on the First Amended Cross-Claim stating that Garrett shall take nothing against Beach by reason of the First Amended Cross-Claim.

I.   **BACKGROUND**

A recitation of the procedural history and factual background of this matter is appropriate.

(a)  **Procedural History**

On September 13, 2012, Garrett and Erin Eileen Garrett commenced the above-captioned bankruptcy case by jointly filing a voluntary petition under chapter 7.  On December 18, 2012, plaintiffs James and Katharine Daily (the "Plaintiffs") timely commenced this adversary proceeding by filing a complaint (Adv. Dkt. 1) against Garrett seeking a determination that an amount of no less than $190,000.00 be deemed non-dischargeable in Garrett's bankruptcy case pursuant to an unspecified section of the Bankruptcy Code.  The complaint also seeks recovery of attorney's fees, costs of suit, and pre-judgment interest on the $190,000.00 claim.  Garrett filed an answer to the complaint on January 24, 2013 (Adv. Dkt. 9), and an amended answer on January 31, 2013 (Adv. Dkt. 13).

On August 14, 2013, the Plaintiffs filed a first amended complaint (Adv. Dkt. 71) (the "First Amended Complaint") seeking

a court determination that the aforementioned $190,000.00 be deemed non-dischargeable in Garrett's bankruptcy case pursuant to 11 U.S.C. § 523(a)(2)(A).  Garrett filed an answer to the First Amended Complaint on August 28, 2013 (Adv. Dkt. 72).

Garrett joined Beach in this proceeding by filing a cross-claim on January 24, 2013 (Adv. Dkt. 10), alleging causes of action for negligence, breach of fiduciary duty, and equitable indemnity.  The prayer for relief requests (1) general, special, and consequential damages according to proof; (2) reasonable attorney's fees, costs, and expenses of litigation according to proof; (3) a judgment declaring Garrett's right to total or partial indemnification from Beach, as well as an apportionment of Garrett and Beach's comparative faults, if any, in the event that Garrett is found liable for the damages alleged by the Plaintiffs in the First Amended Complaint; (4) a declaration that Beach is obligated to defend Garrett in this adversary proceeding, to represent Garrett's interests, and to hold Garrett harmless, either totally or in proportion to the relative faults of Garrett and Beach, from any judgment or settlement that may result from the damages alleged in the First Amended Complaint; (5) costs; and (6) any further relief the court may deem just and proper.

On March 7, 2013, Beach filed a motion to dismiss (Adv. Dkt. 22) all claims for relief set forth in the cross-claim (the "First Beach Motion to Dismiss").  Beach alleged that the first two claims, negligence and breach of fiduciary duty, were barred

- 4 -

by applicable statutes of limitations pursuant to Cal. Code Civ.
P. §§ 335.1 and 343, respectively.  Beach further alleged that
Garrett could not prevail on his claim for equitable indemnity
because he failed to allege all of the elements for that claim,
specifically that Beach was a joint tortfeasor during the events
that gave rise to the original adversary complaint and the First
Amended Complaint.

The First Beach Motion to Dismiss was heard on April 30,
2013, and taken under submission.  The court granted the First
Beach Motion to Dismiss in part by order entered May 2, 2013
(Adv. Dkt. 39).  Specifically, the court dismissed the first
claim for relief, negligence, without leave to amend, finding
that the claim was barred by the two-year statute of limitations
under Cal. Code of Civ. P. § 335.1.  The motion was denied as to
the second claim for relief, breach of fiduciary duty, because
the court found that the claim could not, when viewed in the
light most favorable to Garrett, be treated as a claim other than
one for breach of fiduciary duty.  Accordingly, the court found
that the second claim for relief was subject to a four-year
statute of limitations under Cal. Code Civ. P. § 343 and timely
filed.  The court dismissed the third claim for relief, equitable
indemnity, with leave to amend.  The court found that Garrett
failed to allege facts sufficient to plead a claim for equitable
indemnity, but granted him leave to amend the cross-claim as the
court deemed it possible for Garrett to plausibly allege facts
that could advance a potentially viable claim for equitable

1  indemnity.

2      In response to the court's ruling on the First Beach Motion

3  to Dismiss, Garrett filed the First Amended Cross-Claim, alleging

4  claims for breach of fiduciary duty and equitable indemnity, and

5  praying for the same relief sought in the original cross-claim.

6  On May 24, 2013, Beach filed a motion to dismiss (Adv. Dkt. 42)

7  all claims alleged in the First Amended Cross-Claim (the "Second

8  Beach Motion to Dismiss").

9      In the Second Beach Motion to Dismiss, Beach argued that Mr.

10  Garrett's breach of fiduciary duty claim should be dismissed for

11  two independent yet related reasons.  First, it argued that under

12  California law, Beach, as Garrett's insurance broker, was not a

13  fiduciary and that any fiduciary duties it purportedly owed

14  Garrett were no different than the duties owed under a general or

15  professional negligence standard.  As the court had previously

16  dismissed Garrett's negligence claim without leave to amend,

17  Beach argued that Garrett should not be allowed to pursue a

18  negligence claim by simply "re-labeling" it as a claim for breach

19  of fiduciary duty.  Second, relying substantially on the

20  California Second District Court of Appeal decision in <u>Hydro-Mill</u>

21  <u>Co., Inc. v Hayward, Tilton & Rolapp Ins. Associates, Inc.</u>, 115

22  Cal.App.4th 1145, 10 Cal.Rptr.3d 582 (2004), Beach asserted that

23  Garrett's breach of fiduciary duty claim was barred by a two-year

24  statute of limitations because the gravamen of the claim was

25  really professional negligence and Garrett could not circumvent

26  the two-year statute of limitations by labeling it as a breach of

27

28                              -6-

fiduciary duty claim.  Beach sought dismissal of Garrett's claim for equitable indemnity again on the grounds that Garrett had failed to allege all of the elements of that claim, specifically that Beach was a joint tortfeasor during the events that gave rise to the original adversary complaint and the First Amended Complaint.  Finally, Beach argued that the First Amended Cross-Claim should be dismissed because Garrett had failed to plead facts sufficient to show that Beach's alleged actions were the proximate cause of his damages.

The Second Beach Motion to Dismiss was heard on August 6, 2013, and taken under submission. By order entered August 12, 2013 (Adv. Dkt. 69), the court granted the Second Beach Motion to Dismiss in part.  Specifically, the court dismissed the second claim for relief, equitable indemnity, without leave to amend, finding once again that Garrett had failed to plead facts sufficient to support a plausible claim.  As the court had already given Garrett an opportunity to amend this claim, it found that additional amendment would be futile.  The court denied the Second Beach Motion to Dismiss as to the first claim for relief, breach of fiduciary duty.  The court acknowledged a split of authority under California law as to whether there is a fiduciary relationship between an insurance broker and an insured.  Given the lack of definite California authority on the subject, the court turned to the general definition of a fiduciary relationship under California law and found that Garrett had pled facts sufficient to support a claim for breach

-7-

of fiduciary duty, thereby rejecting Beach's argument that the claim was barred by a two year statute of limitations.

Based on the foregoing rulings, the only remaining claim for relief in the First Amended Cross-Claim, and the only claim that is the subject of the Motion, is Beach's alleged breach of fiduciary duty.

**(b)   Factual Background**

Although the Motion is directed toward the First Amended Cross-Claim, the entire matter arises from facts alleged in the First Amended Complaint.  Accordingly, the discussion must begin with the following allegations set forth in the First Amended Complaint.

In or about July 2008, Garrett, with knowledge that his representations were false and with the intent to deceive the Plaintiffs in order to induce them to enter into an agreement with him, falsely and fraudulently represented to the Plaintiffs that he possessed the experience, skill, available personnel, liability insurance, and workers compensation insurance necessary to construct for them a new single family home at their property located at 10223 Sunrise Vista, Auburn, CA, and to do so in a workmanlike manner, in a timely manner by March 27, 2009, and for a total price of $495,000.00.  Garrett further represented to the Plaintiffs that he would be able to complete the project in a cost effective and timely manner because he had his own employees and therefore had more control over the project and its progress. Additionally, Garrett represented to the Plaintiffs that any

subcontractors working on the project would be licensed contractors.  Not knowing that these representations were false, and in reliance thereon, the Plaintiffs hired Garrett as their general contractor for the project.  On July 3, 2008, Garrett and the Plaintiffs entered into a California Contractor Agreement (Exhibit "A", Adv. Dkt. 71, p.9) (the "Contractor Agreement").  Under the terms of the Contractor Agreement, construction of the home was to be commenced on or before August 18, 2008.

In July 2008, Garrett knew that the Plaintiffs would be borrowing money from Wachovia Mortgage FSB ("Wachovia") for the purpose of funding the project.  On or about September 9, 2008, prior to the commencement of the project, Garrett falsely and fraudulently, with the intent to deceive the Plaintiffs and induce them to continue utilizing him as their builder, represented to both the Plaintiffs and Wachovia that any funds received by him would be used only to pay for costs authorized under the Contractor Agreement.  Garrett knew that if the Plaintiffs were aware of the fact that he did not possess general liability insurance or workers compensation insurance applicable to the construction of their home, or that he did not have his own crew of employees, or that he would hire unlicensed subcontractors, or that he would use construction loan proceeds for purposes other than for the construction project, the Plaintiffs would not have entered into the Contractor Agreement.  Furthermore, Garrett knew that if Wachovia had been aware of any of the foregoing, it would not have loaned money to the

Plaintiffs for the purpose of paying Garrett to complete the project.  On September 9, 2008, relying on Garrett's representations, the parties entered into a Contractor Acknowledgment and Agreement (Exhibit "B", Adv. Dkt. 71, p.20) whereby Wachovia agreed to furnish the Plaintiffs with the funds necessary for Garrett to complete the project.

Garrett commenced construction of the Plaintiffs' home in September 2008.  In May 2009, Garrett abandoned the project even though he had been paid approximately $418,000.00 for his work. At the time he abandoned the job, construction of the home was not close to being complete, and some of Garrett's work that was purportedly complete was so substandard and defective that it had to be either repaired or replaced.  Additionally, after Garrett abandoned the project, the Plaintiffs discovered that he did not have liability insurance or workers compensation insurance, and that he had stopped paying his workers during the course of the project.  He also hired subcontractors who were not licensed to perform the work they performed on the home.

The Plaintiffs made demand on Garrett to compensate them for the expenses they have incurred and will incur in the future to finish the work Garrett refused to complete, as well as compensate them for the cost to repair or replace defective and substandard work Garrett did complete.  However, Garrett has failed and refused, and still fails and refuses, to pay any sums to the Plaintiffs, and the whole sum remains due, owing, and unpaid.

- 10 -

1    With the foregoing in mind, the allegations which have been

2 set forth in the First Amended Cross-Claim or that are otherwise

3 undisputed between the parties include the following.

4    For years prior to 2008, Beach served as Garrett's insurance

5 broker, advising him regarding, and procuring for him, business

6 insurance to cover his construction activities.  Beach and

7 Garrett had a written contract whereby Beach agreed to perform

8 insurance brokerage services for Garrett and under which Garrett

9 paid Beach a fee each year for procuring insurance (Exhibit "H",

10 "Broker Fee Agreement", Adv. Dkt. 140, p.3).  Over the years,

11 Garrett told Beach through Beach's representative, Linda Curtis

12 ("Curtis"), that his business involved home remodels and

13 additions and some new construction of residential homes.

14    The parties do not dispute the following allegations

15 regarding their specific business relationship, though the court

16 acknowledges that Beach believes the facts to be immaterial for

17 purposes of the Motion.  Beach was tasked with surveying the

18 insurance market, finding the best insurance products at the best

19 prices to fit Garrett's particular insurance needs based on his

20 construction activities, and actually obtaining this insurance

21 for Garrett.  Beach's practice included preparing any and all

22 forms necessary for Garrett to apply for and purchase insurance.

23 To that end, Beach held itself out as "the experts" in the field

24 of insurance for contractors.  The foregoing convinced Garrett to

25 place his trust and confidence in Beach for all of his business

26 insurance needs.  Because this relationship was built on such

27

28                              - 11 -

trust and confidence, Beach did not spend time reviewing any
prospective insurance applications or policies with Garrett.
Instead, it took responsibility for reading all of the insurance
documents on behalf of Garrett, preparing any and all necessary
forms, and asking Garrett questions it believed were appropriate
to determine if anything about the nature of his business had
changed from the prior year that would warrant changing the
nature of his insurance coverage.  Beach simply asked Garrett to
"sign here" and "write us a check."  Beach followed these
practices in the summer of 2008.

In August 2008, Curtis contacted Garrett to inform him it
was time to renew his insurance policy for his construction
business.  At the time of this communication, Garrett had
expiring commercial general liability coverage through Lincoln
General Insurance Company effective September 6, 2007, through
September 6, 2008 (Exhibit "A", Adv. Dkt. 41, p.11) (the "Lincoln
General Policy"), which excluded coverage for the construction of
tract housing, condominiums, apartments, townhouses, and
commercial buildings.  Other than those specific exclusions,
however, Garrett's construction work in building new houses and
doing remodels and additions were all covered.  Garrett
specifically told Curtis in July or August 2008 that he had
recently entered a contract to build the Plaintiffs' home in
Auburn, CA.  With the assistance of Beach, Garrett completed
paperwork applying for 2008 to 2009 insurance identifying that
twenty percent (20%) of his work would be for "new" construction.

Garrett specifically asked Beach to renew all of the coverage he had under the Lincoln General Policy.  Curtis recommended that Garrett obtain his next business insurance policy through Navigators Insurance Company ("Navigators"), stating that the Navigators policy provided the same coverage and limits as the Lincoln General Policy but at a cheaper price.  Based on Ms. Curtis' representations, Garrett purchased a policy from Navigators which went into effect from September 15, 2008, through September 15, 2009 (Exhibit "D", Adv. Dkt. 116, p.135) (the "Navigators Policy").

On July 3, 2008, Garrett and the Plaintiffs entered into the Contractor Agreement.  Construction of the home began in September 2008.  However, prior to commencing construction the Plaintiffs asked that Garrett provide Wachovia with whatever information it may require in order to approve disbursement of the construction funds to the Plaintiffs.  One of the things Wachovia required was a certificate of liability insurance (Exhibit "C", Adv. Dkt. 41, p.16) (the "Certificate") evidencing that Garrett was insured.  In late September 2008, Garrett telephoned Curtis and told her that he needed the Certificate. Beach provided the Certificate on or about September 30, 2008.

In May 2009, the Plaintiffs locked Garrett out of the house, which caused him to file a release with the City of Auburn indicating that he was no longer working on the project. Sometime in 2010 or 2011, the Plaintiffs tendered a claim to Navigators claiming damages as a result of Garrett's negligence.

Navigators declined the tender, asserting that Garrett did not have insurance coverage for his work on the construction project because the Navigators Policy contained an exclusion for "construction of new homes as a general contractor or developer." On May 11, 2011, the Plaintiffs filed a complaint for damages against Beach, Garrett dba Garrett Construction, Wachovia, Digital Draw Network, Inc., and DOES 1 through 100 in Placer County Superior Court, alleging many causes of action (negligence, breach of warranty, breach of third-party beneficiary contract, breach of fiduciary duty, etc.) and one count of fraud (Exhibit "F", Adv. Dkt. 139, p.14).

## II.   **ANALYSIS**

The sole claim for relief remaining in the First Amended Cross-Claim is the claim for relief for Beach's alleged breach of fiduciary duty. Garrett alleges that, contrary to Beach's representations and his requests, the Navigators Policy contained an exclusion for construction of new homes, whereas the Lincoln General Policy contained no such exclusion. Garrett further alleges that but for the conduct of Beach, and its failure to procure in September 2008 the same coverage from Navigators as the coverage protecting Garrett under the Lincoln General Policy, the Plaintiffs would not have sued him and he would not be forced to defend himself in the bankruptcy court against the Plaintiffs' claims. Furthermore, Garrett alleges that Beach breached its fiduciary duty by exposing Garrett to liability for his work in constructing a new home for the Plaintiffs because Beach failed

- 14 -

to obtain from Navigators a policy including all of the coverages
that protected Garrett under the Lincoln General Policy, in
particular coverage for the construction of new homes.

**(a)   Legal Standard**

Federal Rule of Civil Procedure 56, made applicable to this
proceeding by Bankruptcy Rule 7056, provides that summary
judgment is appropriate if the pleadings, depositions, answers to
interrogatories, admissions on file, and declarations, if any,
show that there is "no genuine issue of fact and that the moving
party is entitled to judgment as a matter of law."   "The initial
burden of showing the absence of a material factual issue is on
the moving party.   Once that burden is met, the opposing party
must come forward with specific facts, and not allegations, to
show a genuine factual issue remains for trial."   DeHorney v.
Bank of America N.T.&S.A., 879 F.2d 459, 464 (9th Cir. 1989); see
also, Celotex Corp. v. Catrett, 477 U.S. 317, 323-324, 106 S.Ct.
2548, 2553, 91 L.Ed.2d 265, 278-280 (1986).   On summary judgment,
all reasonable inferences to be drawn from the underlying facts
must be viewed in the light most favorable to the nonmoving
party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting
United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993,
8 L.Ed.2d 176 (1962)).

**(b)   Discussion**

Beach now asserts that it is entitled to summary judgment as
a matter of law under two independent theories.   First, it

- 15 -

alleges that the undisputed material facts show that Garrett has failed to establish all elements for a cause of action for breach of fiduciary duty.   Specifically, it claims that Garrett has failed to show that his damages were proximately caused by Beach's alleged breach of fiduciary duty because the claims being made by the Plaintiffs would not have been covered under either the Lincoln General Policy or the Navigators Policy.   In other words, Beach's alleged failure in September 2008 to obtain for Garrett the same coverages contained in the Lincoln General Policy is irrelevant because "new construction" coverage under the Lincoln General Policy would have excluded coverage for abandonment of the construction project as well as substandard and defective work that had to be repaired or replaced. Allegedly, neither the Navigators Policy nor the Lincoln General Policy would have covered these activities, so the result would have been the same even if the Navigators Policy included coverage for "new construction."   Therefore, Beach asserts that there is no causal connection between its alleged breach and Garrett's alleged damages.

Second, Beach argues that Garrett's claim is barred by the two-year statute of limitations made applicable to professional negligence claims by Cal. Code Civ. P. § 339.   In support of its position, Beach again relies substantially on <u>Hydro-Mill</u> and related California and federal authorities in arguing that the nature of Garrett's claim, i.e., the gravamen of the action, is truly professional negligence.   Furthermore, when negligence and

fiduciary duty claims overlap regarding a breach of the duty of
care, the nature of the claim is negligence and is thus subject
to a two-year statute of limitations.  Beach therefore asserts
that Garrett cannot circumvent the two-year statute of
limitations by simply re-labeling the claim as a breach of
fiduciary duty in order to take advantage of the four-year
statute of limitations under Cal. Code Civ. P. § 343.

     The court takes up Beach's statute of limitations argument
first.

**(1)  *The Statute of Limitations for Garrett's Breach of Fiduciary
       Duty Claim is Two Years Pursuant to Cal. Code Civ. P. § 339***

     The court concludes that Beach should be entitled to
judgment as a matter of law because Garrett's claim for breach of
fiduciary duty is governed by the two year statute of limitations
applicable to professional negligence claims as set forth in Cal.
Code Civ. P. § 339, and is therefore time barred.

     The court acknowledges that it has twice previously ruled on
the issue of the nature of Garrett's claim for breach of
fiduciary duty.  First, the court's minute order entered April
30, 2013 (Adv. Dkt. 33), ruling on the First Beach Motion to
Dismiss, stated that, in viewing the cross-claim in the light
most favorable to Garrett, the claim could not be treated as a
claim other than a breach of fiduciary duty.  Second, the court's
minute order entered August 6, 2013 (Adv. Dkt. 65), ruling on the
Second Beach Motion to Dismiss, reaffirmed the court's prior view
that construed the claim as a breach of fiduciary duty based on
the general California state law definition of a fiduciary

- 17 -

relationship.  Despite these prior rulings, the court now
concludes, in light of the additional briefing that has been
provided on this matter, which includes citations of authority
that were not available to the court when it made the prior
rulings, that the gravamen of Garrett's claim for relief is
professional negligence and is therefore barred by a two year
statute of limitations.

The court does not adopt Beach's argument that the court's
prior rulings do not preclude a finding in Beach's favor for
purposes of the Motion simply because different standards apply
to motions to dismiss and motions for summary judgment.  Rather,
the court's conclusion is rooted in the longstanding choice of
law principles enumerated by the Supreme Court in <u>Erie Railroad</u>
<u>Company v. Tompkins</u>, 304 U.S. 64 (1938), commonly referred to as
the "<u>Erie</u> Doctrine."  Specifically, the Court in <u>Erie</u> held that
in diversity of citizenship cases, the law to be applied in any
case is the law of the state, as declared either by its
legislature in a statute or by its highest court in a decision.
<u>Erie</u>, 304 U.S. at 78.  Although the court recognizes that the
present case is not based on diversity of citizenship, the <u>Erie</u>
Doctrine has been found applicable to non-diversity cases as
well.  19 C. Wright & A. Miller, <u>Fed. Practice and Procedure</u> §
4520 (2d ed. 2014) ("It frequently is said that the doctrine of
<u>Erie Railroad Company v. Tompkins</u> applies only in diversity of
citizenship cases; this statement simply is wrong").  Federal
courts have applied state law where, as here, there is pendent or

- 18 -

1   supplemental jurisdiction.  Id.; Felder v. Casey, 487 U.S. 131,

2   151 (1988) (the Erie Doctrine applies equally to state law claims

3   that are brought to the federal courts through supplemental

4   jurisdiction); Hoyos v. Telecorp Communications, Inc., 488 F.3d

5   1, 5 (1st Cir. 2007) ("a federal court sitting in diversity or

6   exercising supplemental jurisdiction over state law claims must

7   apply state substantive law, but a federal court applies federal

8   rules of procedure to its proceedings").

9        As the court stated in its minute order entered August 6,

10  2013, under California law it is unclear whether there is a

11  fiduciary relationship between an insurance broker and an

12  insured.  Croskey et al., Cal. Practice Guide: Insurance

13  Litigation (The Rutter Group 2011) P 2:65.20, p.2-37 (noting that

14  under California Insurance Code section 1733, a broker acts in a

15  fiduciary capacity when it receives and holds premium payments

16  from the insured or premium refunds from the insurer due the

17  insured); Workmen's Auto Ins. Co. v. Guy Carpenter & Co., Inc.,

18  194 Cal.App.4th 1468 (2011) (holding that a broker could not be

19  sued for breach of fiduciary duty; Hydro-Mill, 115 Cal.App.4th at

20  1156 ("it is unclear whether a fiduciary relationship exists

21  between an insurance broker and an insured"); Eddy v. Sharp, 199

22  Cal.App.3d 858 (1988) ("where the agency relationship exists

23  there is not only a fiduciary duty but an obligation to use due

24  care").  However, the existence of a fiduciary relationship

25  between the parties is merely ancillary to Beach's main argument,

26  i.e., that under California law, when allegations of professional

27

28                              - 19 -

1  negligence subsume all allegations for breach of fiduciary duty,

2  the claim for relief should be analyzed as a professional

3  negligence claim subject to a two year statute of limitations

4  regardless of whether it was labeled as a claim for breach of

5  fiduciary duty.

6      The Erie Doctrine directs the court to follow state statutes

7  or the rule of decision of the Supreme Court of California.  17A

8  James Wm. Moore et al., Moore's Federal Practice § 124.20[1] (3d

9  ed. 2004) ("When state law provides the rule of decision under

10  the Erie doctrine, federal courts must generally accept a

11  decision of the state's highest court as a definitive statement

12  of state law"); West v. American Tel. & Tel. Co., 311 U.S. 223,

13  236 (1940) ("the highest court of the state is the final arbiter

14  of what is state law.  When it has spoken, its pronouncement is

15  to be accepted by federal courts as defining state law unless it

16  has later given clear and persuasive indication that its

17  pronouncement will be modified, limited or restricted").

18      Here, neither party has cited any Supreme Court of

19  California decision that definitively decides whether an

20  insurance broker has fiduciary duties to the insured outside the

21  areas of premium payments and refunds.  The court is unaware of

22  such any such decision.  In such a situation, federal courts are

23  instructed to predict the way the highest state court would rule

24  if presented with the issue.  17A James Wm. Moore et al., Moore's

25  Federal Practice § 124.22[3]; Aetna Casualty & Surety Co. v.

26  Sheft, 989 F.2d 1105, 1108 (9th Cir. 1993) ("When a decision

27

28                              - 20 -

turns on applicable state law and the state's highest court has
not adjudicated the issue, a federal court must make a reasonable
determination of the result the highest state court would reach
if it were deciding the case"). In performing this function, "in
the absence of direct authority the federal court may look to
state high court decisions in related or analogous cases for an
indication of how the state's highest court is likely to rule.
Similarly, considered dicta of the state's highest court is
persuasive evidence of how the state's highest court might rule.
In absence of other authority, federal courts may follow the
considered dicta of the state's highest court." 17A James Wm.
Moore et al., Moore's Federal Practice § 124.22[3]. This court
construes the reference to "state high court" decisions to refer
to state intermediate appellate court decisions.

Based on the foregoing, the most closely related Supreme
Court of California case for purposes of the Motion appears to be
Vu v. Prudential Property & Casualty Insurance Company, 26
Cal.4th 1142 (2001). Vu involved a plaintiff whose home was
damaged in the Northridge earthquake of 1994. At the time of the
earthquake, the plaintiff maintained homeowner's insurance
through Prudential, and the policy contained a one-year suit
clause providing that no action could be brought unless it was
started within one year of the date of the loss. The plaintiff
timely contacted Prudential to report that his home had been
damaged, and Prudential sent an adjuster to inspect the
residence. The adjuster concluded that the amount of damage to

the plaintiff's dwelling was far below the policy deductible.
Prudential subsequently issued the plaintiff a check for damage
to appurtenant structures, which was covered separately from his
dwelling.   Long after the one-year statute of limitations had
expired, the plaintiff discovered additional property damage
which far exceeded his policy deductible.   He informed Prudential
of the newly discovered damage and requested coverage.   However,
Prudential declined on the ground that the one-year statute of
limitations had expired.   Although the decision involved a
reconsideration of the doctrine of estoppel as set forth in <u>Neff</u>
<u>v. New York Life Insurance Company</u>, 30 Cal.2d 165 (1947), the
court addressed the insurer-insured relationship in dictum:

> The insurer-insured relationship, however, is not a
> true "fiduciary relationship" in the same sense as the
> relationship between trustee and beneficiary, or
> attorney and client (see Croskey et al., <u>Cal. Practice</u>
> <u>Guide: Insurance Litigation</u> (The Rutter Group 2000) ¶
> 11:150, p. 11-31.) It is, rather, a relationship often
> characterized by unequal bargaining power (see <u>Steven</u>
> <u>v. Fidelity & Casualty Co.</u> (1962) 58 Cal.2d 862,
> 879-884, 27 Cal.Rptr. 172, 377 P.2d 284) in which the
> insured must depend on the good faith and performance
> of the insurer (see <u>Cates Construction, Inc. v. Talbot</u>
> <u>Partners</u> (1999) 21 Cal.4th 28, 44, 86 Cal.Rptr.2d 855,
> 980 P.2d 407; <u>Egan v. Mutual of Omaha Ins. Co.</u>, supra,
> 24 Cal.3d 809, 819, 169 Cal.Rptr. 691, 620 P.2d 141).
> This characteristic has led the courts to impose
> "special and heightened" duties, but "[w]hile these
> 'special' duties are akin to, and often resemble,
> duties which are also owed by fiduciaries, the
> fiduciary-like duties arise because of the unique
> nature of the insurance contract, not because the
> insurer is a fiduciary." (<u>Love v. Fire Ins. Exchange</u>
> (1990) 221 Cal.App.3d 1136, 1148, 271 Cal.Rptr. 246;
> see <u>Hassard, Bonnington, Roger & Huber v. Home Ins. Co.</u>
> (S.D.Cal.1990) 740 F.Supp. 789; Croskey et al., supra,
> ¶ 11:150, p. 11-31.).

<u>Vu v. Prudential Property & Casualty Insurance Company</u>, 26

1  Cal.4th at 1150-51.

2      Accordingly, the Supreme Court of California suggests that
3  there is no fiduciary relationship in an insurer-insured
4  relationship.  This is persuasive but not controlling on the
5  issue before this court as the parties in the instant case were
6  in an insurance broker-insured relationship, not an insurer-
7  insured relationship.  Furthermore, the court in Vu does not
8  address the issue raised in the Motion, i.e, how to analyze a
9  claim for relief for purposes of determining the applicable
10  statute of limitations where negligence and fiduciary duty claims
11  allegedly overlap regarding a breach of the duty of care.

12      In the absence of clear guidance from the highest court of
13  the state, "federal courts should follow decisions of
14  intermediate state appellate courts unless persuasive data
15  indicate that the highest state court would decide the issue
16  differently."  17A James Wm. Moore et al., Moore's Federal
17  Practice §§ 124.20[2], 124.22[3].  Both parties have cited to an
18  abundance of intermediate California state court opinions.
19  However, the court is persuaded that, given the authorities
20  presented, the Supreme Court of California would likely find that
21  there is no fiduciary relationship between an insurance broker
22  and an insured, and that the applicable statute of limitations is
23  determined by the nature of the right sued upon, the primary
24  interest affected by the defendant's wrongful conduct, or the
25  gravamen of the action.  In so holding, the court is persuaded
26  that Hydro-Mill and the various intermediate California appellate

27

28                              - 23 -

and federal district court decisions which follow its rationale
are not anomalies in California; rather, they appear to be the
law in California on these issues.  Hydro-Mill, 115 Cal.App.4th
at 1154, 1158 ("To determine the statute of limitations which
applies to a cause of action it is necessary to identify the
nature of the cause of action, i.e., the 'gravamen' of the cause
of action...'[T]he nature of the right sued upon and not the form
of action nor the relief demanded determines the applicability of
the statute of limitations under our code.'...What is significant
for statute of limitations purposes is the primary interest
invaded by defendant's wrongful conduct...If an insurer is not a
fiduciary, then arguably, neither is a broker"); Pascual v. Wells
Fargo Bank, N.A., 2013 U.S. Dist. LEXIS 112061, *12 (N.D. Cal.
2013) (citing to Hydro-Mill); Nor-Cal Products, Inc. v. XL
Insurance America, Inc. et al., 2012 U.S. Dist. LEXIS 159964, *5
(E.D. Cal. 2012) ("Because an insurance broker is not a fiduciary
under California law, claims denominated 'breach of fiduciary
duty' are analyzed as professional negligence claims" (citing to
Hydro-Mill)); Motorist Commercial Mutual Insurance Company fka
American Hardware Mutual Insurance Company, et al. v Kevin
Anthony Soltis, MCM Insurance Agency, Inc., 2013 U.S. Dist. LEXIS
181871, *13 (E.D. Cal. 2013) ("this Court joins numerous others
in refusing to expand the doctrine of fiduciary duty to include
insurance brokers"); Mark Tanner Construction, Inc. v HUB
International Insurance Services, Inc., 224 Cal.App.4th 574, 586
(March 10, 2014) ("other than when handling an insured's money, a

- 24 -

broker's duty - whether or not phrased a fiduciary duty - is no greater than the duty to use reasonable care and diligence in procuring insurance").

Here, Garrett alleges in the First Amended Cross-Claim that he relied on Beach and its representative, Curtis, to procure for Garrett an insurance policy which provided the same coverage for "new construction" of houses as the Lincoln General Policy did. Had Beach done so, the Plaintiffs would not have sued him and he would not be forced to defend himself in this adversary proceeding.   These are the same allegations that formed the basis of Garrett's claim for negligence in the original cross-claim. The court concludes that Garrett's claim for breach of fiduciary duty, regardless of appellation, amounts to a claim of professional negligence.   Hydro-Mill, 115 Cal.App.4th at 1159.

In his opposition to the Motion, Garrett relies predominantly on Eddy v. Sharp, 199 Cal.App.3d 858 (1988) and Westrec Marina Management, Inc. v. Jardine Ins. Brokers Orange County, Inc., 85 Cal.App.4th 1042 (2000) in arguing that, as his insurance broker, Beach owed him fiduciary duties under general principles of agency law and breached those duties by failing to procure for him the same coverage under the Navigators Policy that he had under the Lincoln General Policy.   Accordingly, he argues that a four year statute of limitations should apply to his breach of fiduciary duty claim.   The court is not persuaded.

Eddy merits a brief discussion.   There, an insurance agent representing multiple insurance companies sent the plaintiffs a

proposal to insure their commercial and residential properties

through Great American Insurance Company ("Great American").  The

proposal contained a list of eight exclusions, none of which

excluded a loss caused by water backing up through sewers or

drains (this event eventually occurred, and Great American denied

coverage to the plaintiffs).  The plaintiffs sued the insurance

agent and Great American under theories of negligent

misrepresentation, breach of the contract to insure, and

reformation of contract.  _Eddy_ is an appeal of an entry of

summary judgment in favor of the defendants as to all claims.

Garrett correctly points out that the court in _Eddy_ states that

"[I]f an insurance agent is the agent for several companies and

selects the company with which to place the insurance or insures

with one of them according to directions, the insurance agent is

the agent of the insured...Where the agency relationship exists

there is not only a fiduciary duty but an obligation to use due

care."  _Eddy_, 199 Cal.App.3d at 865.  However, this statement

appears to be dictum.  It was made in the context of determining

what legal duties are owed by an insurance agent to an insured

under a theory of negligent misrepresentation when an insurance

agent fails to accurately inform the insured of a policy's

provisions.  Several courts have also determined this part of the

_Eddy_ opinion to be dictum.  _Hydro-Mill_, 115 Cal.App.4th at 1158;

_Motorist Commercial Mutual Insurance Company_, 2013 U.S. Dist.

LEXIS at *12 (acknowledging the language in _Eddy_ as dictum and

going on to find that the Supreme Court of California's

subsequent opinion in <u>Vu</u> is binding for the principle that an
insurer is not a fiduciary for its insured).  To the extent <u>Eddy</u>
is followed, it appears to be a minority view in California.
Equally important is the fact that the court in <u>Eddy</u> was not
confronted with the issue presently before the court, i.e., which
limitations period applies to a claim in which allegations of
professional negligence and breach of fiduciary duty overlap.

    <u>Westrec</u> is unpersuasive for the same reason that it did not
confront the issues presented in the Motion.  While it is true
that the court in <u>Westrec</u> affirmed a jury verdict which found
that a defendant-insurance broker breached a fiduciary duty by
placing an insurance policy at a premium higher than the best
available price, it did so in the context of determining whether
the trial court erred in denying the defendant's request for a
judgment notwithstanding the verdict.  In so holding, the
standard it used was whether or not reasonable inferences could
be drawn from the evidence supporting the verdict.  It was not
decisively determining whether an insurance broker and insured
are in a fiduciary relationship under California law, nor was it
determining the applicable statute of limitations when
allegations of professional negligence and breach of fiduciary
duty overlap regarding a breach of the duty of care.

    Accordingly, the court concludes that Garrett's claim for
breach of fiduciary duty is governed by a two year statute of
limitations.  Garrett stated in his opposition to the First Beach
Motion to Dismiss that his claim accrued on August 1, 2009, the

day he became aware that the Plaintiffs' claim was denied

coverage by Navigators (Adv. Dkt. 25, p.3, lines 20-22).  Beach

has not since disputed this.  The original cross-claim, which

alleged a claim for relief for breach of fiduciary duty, was

filed on January 24, 2013, well after the two year statute of

limitations under Cal. Code Civ. P. § 339 had expired.

**(2)  *The Court Declines to Reach the Issue of Whether Beach's Alleged Breach of Fiduciary Duty Proximately Caused Garrett's Damages***

Because the court has concluded that Garrett's claim for

breach of fiduciary duty is time barred by a two year statute of

limitations, the court declines to address the issue of whether

or not Beach's alleged breach of fiduciary duty proximately

causes Garrett's damages, which necessarily would involve a

factual determination as to whether Garrett's alleged actions

would have been covered under both the Lincoln General Policy and

the Navigators Policy.  The court has already concluded that

Beach is entitled to judgment as a matter of law.

**(3)  *The Court Declines to Reach the Various Evidentiary Objections Raised by the Parties***

Finally, the court acknowledges that both parties have

raised a series of objections to the evidence in the record (Adv.

Dkts. 142 and 147).  The evidentiary objections pertain to

factual allegations raised in various declarations and

depositions, some of which reference certain exhibits.  The

court's ruling on the Motion, however, is not rooted in any

genuine factual dispute between the parties.  Rather, the court's

conclusion that Garrett's breach of fiduciary duty claim is

barred by a two year statute of limitations is a legal conclusion based on the application of the <u>Erie</u> Doctrine and this court's interpretation of the current law in California on the issues presented.   Sustaining or overruling each evidentiary objection would not alter the court's conclusions.

## III. <u>RECOMMENDATION</u>

    For all of the above reasons, IT IS HEREBY RECOMMENDED that Beach's motion for summary judgment be granted.

    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 157(c)(1).   Although section 157(c)(1) does not contain the procedural provisions found in 28 U.S.C. § 626(b)(1), the court recommends utilizing the same procedure.   Accordingly, within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.   Such a document should be captioned "Objections to Bankruptcy Judge's Report and Recommendation."   Failure to file objections within the specified time may waive the right to appeal the District Court's order.   <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


Dated: July 11, 2014

                                   Thomas C. Holman
                                   United States Bankruptcy Judge

- 29 -